JOHN B. BRISBIN *vs.* JAMES CLEARY and others.

June 25, 1879.

**Vote by Ballot—Secrecy secured.**—As applied to elections of public officers, voting by ballot signifies a mode of designating an elector's choice of a person for an office by the deposit of a ticket bearing the name of such person in a receptacle provided for the purpose, in such a way as to secure to the elector the privilege of complete and inviolable secrecy in regard to the person voted for.

**Same—Provision for numbering Names and Ballots.**—Laws 1878, *c.* 84, § 8, (Gen. St. 1878, *c.* 1, § 84,) providing for the numbering of tickets to correspond with the number of the voter upon the poll-list, is in violation of section 6, article 7, of the constitution of this state, declaring that all elections shall be by ballot.

The plaintiff, a qualified voter in the city of St. Paul, and duly registered as such, desiring to vote at the proper polling place at the general city election on May 7, 1878, offered to the judges of election a printed ballot, such as the law in such case requires, having thereon the names of city officers and candidates therefor. In conformity with Laws 1878, *c.* 84, § 5, (Gen. St. 1878, *c.* 1, § 81,) a number had been set opposite plaintiff's name in the poll-book, and the judges of election refused to receive and deposit plaintiff's ballot in the ballot-box without first endorsing on it the number set opposite plaintiff's name in the poll-book; whereby he was deprived of his right of voting at the election, and thereupon brought this action against the judges of election for his damages by reason of their action. A demurrer to the complaint was overruled by the district court for Ramsey county, *Brill,* J., presiding, and the defendants appealed.

*Henry J. Horn* and *Wm. P. Murray,* for appellants.

*John B. Brisbin,* respondent, *pro se.*

BERRY, J. Laws 1878, *c.* 84, (Gen. St. 1878, *c.* 1, § 84,) being an act regulating elections in incorporated cities of over twelve thousand inhabitants, after providing, in section 6, that the manner of voting at such elections shall be by bal-

lot, proceeds, in section 8, as follows: "The ballots shall be folded by the voter, and delivered to one of the judges of election, who shall forthwith lay the same on the top of the ballot-box, at the same time, in an audible voice, proclaim the name of the person offering to vote, to the board; and if the judges be satisfied, according to the evidence as herein described, that the person offering the vote is a legal voter, the clerks of election shall enter the name of the voter and his number under the proper heading in the poll-book, and the judges shall endorse on the back of the ticket offered the number corresponding with the number of the voter on the poll-book, and shall immediately put his ticket into the ballot-box."

Section 6, article 7, of the constitution of this state, declares that "all elections shall be by ballot, except for such town officers as may be directed by law to be otherwise chosen." As we are of opinion that elections of city officers are not embraced in the exception in regard to the elections of town officers, the question in the case is, whether the provisions in regard to the numbering of ballots are constitutional? The answer to this question depends upon what is meant by voting by ballot. As in case of words and phrases in general, the meaning of this phrase is to be arrived at by inquiring what it is generally understood to mean; that is to say, in what sense it is commonly used by persons who may be presumed to use the English language correctly.

Such an inquiry shows that, as applied to elections of public officers, voting by ballot signifies a mode of designating an elector's choice of a person for an office by the deposit of a ticket, bearing the name of such person, in a receptacle provided for the purpose, in such a way as to secure to the elector the privilege of complete and inviolable secrecy in regard to the person voted for. This privilege of secrecy may properly be regarded as the distinguishing feature of ballot voting, as compared with open voting, as, for instance, voting *viva voce.* The object of the privilege is the independence of

the voter. These views of the nature of the vote by ballot and its object are sanctioned by *Temple* v. *Mead*, 4 Vt. 535, 541; *Com.* v. *Woelper*, 3 S. & R. 29; *Kneass' Case*, 2 Parsons' Eq. Cas. 553; *People* v. *Cicott*, 16 Mich. 283.; *People* v. *Pease*, 27 N. Y. 45, opinion of Denio, C. J.; *Williams* v. *Stein*, 38 Ind. 89; *State* v. *Hilmantel*, 23 Wis. 422; Cooley's Const. Lim. 604–6; Brightly's Lead. Cas. on Elec. 376, note; Mc-Crary's Law of Elec. §§ 194, 195, 400, 413; Encyclopedia Britannica, title *Ballot*.

The statutory provision with regard to the numbering of tickets, above quoted, clearly interferes with and violates the voter's constitutional privilege of secrecy. It is, therefore, an unconstitutional provision. The voter cannot be required to submit to its application to the ticket offered by him, and if, upon refusing to so submit, he is debarred from voting, he may maintain his action for damages against the persons debarring him.

It is proper to add, as having some tendency to support the views at which we have arrived, that the recent constitution of Pennsylvania in 1873, of Missouri in 1875, and of Colorado in 1876, expressly provide that while elections shall be by ballot, the tickets shall be numbered upon a plan similar to that prescribed by our statutory provision above quoted. It is a fair inference that this constitutional qualification of the right to vote by ballot was deemed necessary in order to authorize the numbering provided for.

The defendant's demurrer was properly overruled, and the order overruling the same is accordingly affirmed.