ANDERSON, J. (Concurring.)
— While I concur in the conclusion reached in this cause in affirming the appeal and in denying the application for rehearing, I do so for reasons entirely different from those given in the opinion of Justice Simpson. Regardless of the origin or ■derivation of the word “ballot,” the expression “election by ballot” has been expounded and construed by the various courts of last resort, and with entire unanimity they have declared it meant a secret ballot, and that the *415 essential principle of this manner of voting was to protect the secrecy of the ballot, in order to guard and protect the voter against intimidation, secure to him absolute freedom in the exercise of the elective franchise* and reduce to a minimum the incentive to bribe tlié voter.—3 Am. & Eng. Ency. Law, 768, and other authorities cited on second page of brief on application for rehearing.
The Constitution contemplates, not only that secrecy he preserved at the time of voting, but that it he sacredly guarded for all time, unless the voter himself shall voluntarily divulge it. In Cooley’s Const. Lim. (5th Ed.) p. 762, the author says: “The system of ballot voting rests upon the idea that every elector is to be entirely at liberty to vote for whom he pleases, and with what party he pleases, and that no one is to have the right, or' he in position, to question his independent action, either then or at any subsequent time. The courts have held that a voter, even in case of a contested election, cannot he-compelled to disclose for whom he voted; and for the same reason we think others, who may accidentally, or by trick or artifice, have acquired knowledge on the subject, should not be allowed to testify to- such knowledge, or to give any information in the courts upon the subject. Public policy requires that the veil of secrecy should be impenetrable, unless the voter himself voluntarily determines to lift it. His ballot is absolutely privileged, and to allow evidence of its contents, when he has not waived the privilege, is to encourage trickery and fraud, and would, in effect, establish this remarkable anomaly: that while the law, from motives of public policy, establishes the secret ballot, with a view to -conceal the elector’s action, it at the same time encourages a system of espionage by means of which the veil of secrecy may be penetrated, and the voter’s action disclosed to the public.” So in McCrary, Elect. § 453, it is said: “The secret ballot is just regarded as an important and valuable safeguard for the protection of the voter, and particularly the humble citizen, against the influence which wealth and station may be supposed to exercise. And it is for this reason that the privacy is held not to be limited to the moment of depositing the ballot, but *416 is sacredly guarded by the law for all time, unless the voter himself shall voluntarily divulge it.” In Paine, Elect. § 453, the author states the law as 'follows: “A constitutional provision that all elections shall be held by ballot guaranties the secrecy of the ballot, and is violated by a statute requiring the tickets to be numbered to correspond with the voters’ numbers on the poll list.”
It has been pointedly held in .the cases of Brisbin v. Cleary, 26 Minn. 107, 1 N. W. 825; Williams v. Stein, 38 Ind. 89, 10 Am. Rep. 97 and Ritchie v. Richards, 14 Utah, 345, 47 Pac. 670, that a statute requiring the numbering of the balot and the keeping of corresponding poll lists was violative of the Constitution, inasmuch as said statute destroyed the secrecy of the ballot. The writer has been unable to find a single authority to the contrary. On the other hand, the framers of the Constitutions of Pennsylvania (1873), of Missouri, (1875) and of Colorado (1876), realizing, uo doubht, that the numbering of the ballot would be violative of the old Constitution, expressly provided that, while elections should be by ballot, the tickets should be numbered. I do not wish to be understood as holding that an act requiring the numbering of the ballot under any and all conditions would be violative of the Constitution. The purpose of the Constitution is to preserve the secrecy of the ballot, yet a statute might require the numbering of the ballot and at the same time preserve its secrecy, by imposing certain duties upon the election officers, such as destroying the ballots before comparison with the poll list, etc.; and this point was doubtless not considered by the courts when considering the numbering of the ballots,-else the respective acts construed may have had no provision for preserving the secrecy, notwithstanding the ballots were to be numbered.
Acts 1903, p. 122, § 10, provides for the numbering of the ballots and the keeping of corresponding poll lists, and the act nowhere provides for a destruction of the ballots or forbids a comparison. How each voter voted can be ascertained by the election managers or commissioners without a violation of law on their part, by a comparison of the ballots with the poll list, and said section 10 is clearly violative of section 179 of the Oonsti- *417 tuition of 1901, in so far as it requires a numbering of tlie ballot. “The rule is well established, and founded' in the highest wisdom. Because, however, a small portion of an act is invalid, it does not necessarily follow that the whole act is void. All that portion of the act which is not repugnant to the Constitution is valid. While the numbering of the ballots was improper, still that circumstance should not have the force'to avoid the act and overturn the election. The electors were not responsible. Their ballots were honestly cast, and there has not been sufficient reason shown why they should not have been counted.”—Ritchie v. Richards, 14 Utah, 379, 47 Pac. 681. The manifest design of the Constitution in preserving the secrecy of the ballot is for the protection of the voter, and, while he cannot complain because of the numbering of his ballot, and could doubtless use the courts to enforce his constitutional right to vote secretly, yet, when he casts his vote without protest, the courts will not deprive him of same, simply because the managers, in compliance with an unconstitutional requirement of the act, numbered the ballot. This court, without determining the constitutionality of the general election law in this respect, has held that the section requiring the numbering of the ballot was merely directory, and that a failure to comply therewith on the part of the election officers did not affect the ballots cast which were not numbered, or the result of the election.—Montgomery v. Henry, 144 Ala. 629, 39 South. 507, 1 L. R. A. (N. S.) 656.
There is nothing in the statute invalidating the ballots when honestly cast without having been numbered, cr in the Constitution invalidating them because they were numbered; and the doing of or leaving undone something merely directory will not affect the result or annul the election, if there is enough left in the act providing for the holding of same with the unconstitutional portion eliminated. The Case of Brisbin, supra, wherein the statute requiring the numbering of the ballot was construed, was an action on the part of the elector against the election judges for refusing to let *418 him vote without numbering his ballot. The Indiana .Case of Stein, supra, was an action by an elector against the election managers for numbering his ballot against his protest. The proceeding in the case at bar is not by an elector, complaining that- his ballot was improperly numbered, but by a defendant, under indictment, protesting against being tried at Heflin, the county site, because the election fixing the county site at said point was carried by ballots -which were numbered in violation of. the Constitution. This fact did not render the election void. “A mere irregularity in conducting an election, which deprives no legal voter of his vote and does not change the result, never has been held to invalidate an election. The rules prescribed by the law for conducting an election are designed chiefly to afford an opportunity for the free and fair exercise of the election franchise, to prevent illegal votes, and to ascertain with certainty the result. Such rules are directory merely, and npt jurisdictional or imperative.”—Hodge v. Linn, 100 Ill. 405; Platt v. People, 29 Ill. 54.
The Supreme Court of Missouri, a state -with a Constitution permitting the numbering of the ballots and with a statute requiring that they be numbered, and which further provided that ballots not numbered could not be counted, in case of State v. Mullix, 58 Mo. 355, held, in .an election contest, that the ballots not numbered should not have been counted and that the statute was not merely directory, because it expressly required that the ballots should be numbered, and not counted unless they were. We have nothing in our organic law or statutes striking down ballots because numbered dr not numbered. Therefore the doing of the one or leaving undone the other is merely directory, and neither of which invalidates the election.