Samuel VOLTAGGIO, Plaintiff,

v.

Nicholas V. CAPUTO, County Clerk, County of Essex, State of New Jersey, and Robert J. Burkhart, Secretary of State, State of New Jersey.

Civ. A. No. 727–62.

United States District Court
D. New Jersey.
Sept. 28, 1962.

Appeal Dismissed Jan. 7, 1963.
See 83 S.Ct. 325.

Harkavy & Lieb, by Abraham I. Harkavy, East Orange, N. J., for plaintiff.

Nicholas T. Fernicola, Newark, N. J., for County of Essex.

Arthur J. Sills, Atty. Gen., New Jersey, by William L. Boyan, Deputy Atty. Gen., for State of New Jersey.

Before McLAUGHLIN, Circuit Judge, and MEANEY and COHEN, District Judges.

McLAUGHLIN, Circuit Judge.

Plaintiff brings this action under the Federal Civil Rights Act of 1957, 28 U.S. C. § 1343(3) and (4). He is an independent candidate for the office of Member of the House of Representatives, 11th Congressional District of the State of New Jersey. He is unaffiliated with any political party.

He asserts that the controlling New Jersey election statutes which: (1) give first choice of position on the official ballot to political parties, with those nominated by petition following thereafter (N.J.Rev.Stat. 19:14–6, 19:14–8, 19:14–10, 19:14–12); (2) prohibit an independent candidate from using as a principle or slogan the designation, name, derivative or any part thereof as a noun or adjective of any political party entitled to participate in the primary election (N.J.Rev.Stat. 19:13–4); (3) allegedly give the particular county clerk, in this instance defendant Nicholas Caputo, the authority to designate the position of the names of the independent candidates on the official ballot for the General Election (N.J.Rev.Stat. 19:14–12), are in violation of the Fourteenth Amendment to the Constitution of the United States and Article I, Section 4, clause 1 thereof.

■ We think that under the allegations of the complaint this three judge court has been properly convened and possesses jurisdiction of the cause of action presented. Baker v. Carr, 369 U.S. 186, 187, 195, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

On the merits of the cause of action the language of Article I, Section 4, clause 1 of the United States Constitution is vitally important. It reads:

*"The Times, Places and Manner of holding Elections For Senators and Representatives, shall be prescribed in each State by the Legislature thereof;* but The Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." (Emphasis supplied.) There has been no changing in any respect of the above referred to election laws of New Jersey by the Congress of the United States. Generally, the latter is most reluctant to interfere with the election regulations of the several states, United States v. Gradwell, 243 U.S. 476, 482, 37 S.Ct. 407, 61 L.Ed. 857 (1917). Specifically, with reference to the type of election before us, as the United States Supreme Court said in United States v. Classic, 313 U.S. 299, 311, 61 S.Ct. 1031, 1035, 85 L. Ed. 1368 (1941), "the states are given, and in fact exercise, a wide discretion in the formulation of a system for the choice

by the people of representatives in Congress."

■ Coming to the first of the questions before us, we say at once that the statutory directive for the listing of the candidates' names on the ballot is not perfect. Under it there is no opportunity for an independent candidate to have his name in the top group. But there is not the slightest justifiable suspicion that this was deliberate or practicably avoidable. The alternate suggestion would present a badly scrambled ballot to the voter which would make it doubtful that the intentions of at least some of the electorate would be carried out. Cf. Perry v. Giuliano, 46 N.J.Super. 550, 135 A.2d 24 (1957).

Plaintiff as an independent is permitted under the state law to appear on the ballot by filing a petition with half as many signatures as is required for a party candidate. He could have obtained one of the top row positions if he had been named by a group which in the previous election had polled 10% of the total state vote. Absent that, New Jersey had no commitment to deliberately disturb the voters selection of a full ticket by inserting plaintiff's name among the party designees who had so qualified under the law. In Illinois, the state by its election statute was empowered to keep certain minor candidacies off the ballot entirely. That authority was upheld by the United States Supreme Court in Mac-Dougall v. Green, 335 U.S. 281, 69 S.Ct. 1, 93 L.Ed. 3 (1948). New Jersey, as seen in this action, allows such candidacies. And it has developed a workable ballot by means of which its citizens can readily identify all of the candidates for the various offices not merely at the polling place but prior to the general election through sample ballots mailed to their homes in accordance with the election statute (N.J.Rev.Stat. 19:14–25).

We think that New Jersey has met the difficult ballot position problem head on and disposed of it fairly under all of the circumstances in accordance with its affirmative obligation under Article I, Section 4, clause 1 and nowise in violation of plaintiff's undeniable rights given him by the Fourteenth Amendment.

■ The second point pressed is that plaintiff is entitled to have the slogan "Life Long Democrat" on the ballot beneath his name.

By Rev.Stat. 19:14–10, Rev.Stat. 19:-13–4, an independent candidate is allowed to have printed immediately following his name a designation of the "party" or principles he represents but he is specifically prohibited from the use of any designation which contains the "name, derivative, or any part thereof as a noun or an adjective of any political party, entitled to participate in the primary election."

In adopting the phrase "Life Long Democrat" plaintiff squarely contravenes the letter and spirit of the law. Unless the latter is opposed to the United States Constitution the designation was properly barred from the ballot.

There can be no possible misunderstanding of the basic importance of political parties in our American way of life. As Mr. Justice Reed described them, speaking for the United States Supreme Court in Ray v. Blair, 343 U.S. 214, 220–221, 72 S.Ct. 654, 656, 657, 96 L.Ed. 894 (1952), "They were created by necessity, by the need to organize the rapidly increasing population, scattered over our Land, so as to coordinate efforts to secure needed legislation and oppose that deemed undesirable." That decision sustained Alabama's enforcement of a bylaw of the state Democratic Executive Committee requiring pledges from nominees for Democratic candidate for elector to vote for the presidential nominee of the Democratic National Convention. The Court upheld, p. 227, 72 S.Ct. p. 660, "A state's or a political party's exclusion of candidates from a party primary because they will not pledge to support the party's nominees [as] a method of securing party candidates in the general election, pledged to the philosophy and leadership of that party."

Plaintiff is not a candidate of the Democratic Party. The characterization of

him as "Life Long Democrat" on the official ballot might mislead voters to assume he was. Allowance of that sort of practice could lead to ballot chaos and render harm to our fundamental process of government. In re Greene, 9 App.Div. 223, 41 N.Y.S. 177 (1896), differs materially from the situation before us on its facts. It has itself been confined to those facts by a later opinion, Marcantonio v. Hefferman, 192 Misc. 868, 83 N. Y.S.2d 367 (1948), which upheld a statutory provision quite similar to the present issue.

▌ Finally, plaintiff contends that Rev.Stat. 19:14–12, empowers the county clerk to use his discretion in positioning the names of the independent candidates on the official ballot for the General Election. The sole ground for this is the fourth paragraph of Rev.Stat. 19:14–12, which reads:

> "The position which the names of candidates, and bracketed groups of names of candidates nominated by petitions for all offices, shall have upon the general election ballot, shall be determined by the county clerks in their respective counties."

Actually the above language is sharply restricted by the fifth and eighth paragraphs of this statute where it is stated that:

> "Where there is but one person to be elected to an office, the names of the several candidates who have filed petitions for such office shall be written upon cards of the same size, substance and thickness. The cards shall be placed in a covered box with an aperture in the top large enough to admit a man's hand and to allow the cards to be drawn therefrom. The box shall be turned and shaken thoroughly to mix the cards and the cards shall be withdrawn one at a time.

> \* \* \* \* \* \*

> "The name or names of the candidate or bracketed group of candidates first drawn from the box shall be printed directly below the proper title of the office for which they were nominated, and the name or names of the candidate or bracketed group of candidates next drawn shall be printed next in order, and so on, until the last name or bracketed groups of names shall be drawn from the box."

In the context of the law the county clerk has no discretion regarding the drawing of lots for the order of independent candidates for an office where there is more than one candidate therefor. See Perry v. Giuliano, supra, p. 553, 135 A.2d 24. The mechanics of the drawing so carefully detailed make it very clear that all independent candidates have an equal chance to be drawn first in their group and to be so placed on the ballot.

We find no merit in the point.

As we noted after the conclusion of oral argument, we are gravely concerned over the absence as parties to this suit of the major political parties and their candidates who are on the ballot before us and whose rights are definitely involved. We recognized the substantial problem raised in that phase of the litigation but because even if it were solved, the questions on the merits would still remain, we preferred to deal with the latter directly.

The above will supplement the short opinion delivered from the bench September 14, 1962, because of the urgency of the matter, and the order of dismissal entered that day. Findings of Fact and Conclusions of Law sufficiently appear in this opinion. No separate Findings of Fact and Conclusions of Law will be filed.